UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MICHELLE SALISE FORD,

    Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

    Defendant.

CASE NO. C18-99-BAT

**ORDER AFFIRMING THE COMMISSIONER AND DISMISSING THE CASE**

Plaintiff Michelle Salise Ford appeals the ALJ's decision finding her disabled as of January 2, 2016, but not disabled between March 26, 2011, and January 1, 2016. She contends the ALJ erred in (1) finding at step three she did not meet or equal Listings 1.02 or 1.03, (2) assessing certain medical opinion evidence, (3) discounting her testimony, and (4) entering findings at step five.[1] Dkt. 10 at 2. The Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** the case with prejudice.

## BACKGROUND

Plaintiff has an eleventh-grade education and certified nurse assistant ("CNA") training, and has worked as a CNA, cook, painter, temporary laborer, and elections administration

---

[1] Plaintiff also assigns error to the ALJ's residual functional capacity ("RFC") assessment. This issue is not addressed separately because it reiterates arguments addressed elsewhere. Dkt. 10 at 16-17.

ORDER AFFIRMING THE COMMISSIONER AND DISMISSING THE
CASE - 1

specialist. Tr. 323, 653, 660. At the time of the most recent administrative hearing, plaintiff was working part-time for FedEx labeling and scanning packages. Tr. 350. In May 2011 and August 2012, she applied for benefits, alleging disability as of June 15, 2010.[2] Tr. 607-10, 613-18. Her applications were denied initially and on reconsideration. Tr. 471-88. The ALJ conducted a hearing on October 2, 2014 (Tr. 307-43), and subsequently found plaintiff not disabled before November 1, 2012, but disabled thereafter. Tr. 443-55. The Appeals Council granted plaintiff's request for review and reversed the entire ALJ decision, remanding for a new hearing and consideration of new evidence as well as reconsideration of plaintiff's mental impairments and RFC. Tr. 462-63.

A different ALJ held a hearing on November 8, 2016 (Tr. 344-66), and subsequently found plaintiff not disabled before January 2, 2016, but disabled thereafter. Tr. 221-38. The Appeals Council denied review making the ALJ's decision is the Commissioner's final decision. Tr. 2-8.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[3] the ALJ found:

**Step one:** Plaintiff worked since her alleged onset date, but this work did not rise to the level of substantial gainful activity.

**Step two:** Ms. Ford's history of pulmonary embolism, history of plantar fascia release, history of renal insufficiency, status post bilateral shoulder surgeries, mild carpal tunnel syndrome, cervical degenerative disc disease, mild lumbar facet arthrosis, status post reattachment of Achilles tendon and retrocalcaneal exostectomy in the right foot, mild degenerative joint disease in left foot, status post bunionectomy and removal of soft tissue in the right foot, mild degenerative changes in the left hip, depression, panic disorder, posttraumatic stress disorder, and psychosis were severe impairments.

---

[2] At the 2014 administrative hearing, the ALJ explained the adjudicated period he could consider started on March 26, 2011, due to a prior administratively final ALJ decision finding plaintiff not disabled on March 25, 2011. Tr. 311-12, 370-81.

[3] 20 C.F.R. §§ 404.1520, 416.920.

ORDER AFFIRMING THE COMMISSIONER AND DISMISSING THE
CASE - 2

**Step three:** These impairments did not meet or equal the requirements of a listed impairment.[4]

**RFC:** Plaintiff can perform sedentary work, with additional limitations. She cannot climb ropes, ladders, and scaffolds. She cannot climb stairs, crouch, crawl, and kneel. She can occasionally stoop. She can frequently handle and finger. She must avoid concentrated exposure to extreme cold. She can understand, remember, and carry out simple and routine tasks. She can perform unskilled jobs that do not require fast paced (i.e. belt paced) production. She can have superficial contact with the general public and work with small groups. She can interact with co-workers and supervisors to complete tasks.

**Step four:** Plaintiff cannot perform her past work.

**Step five:** Beginning on January 2, 2016, Plaintiff was disabled under the Medical-Vocational Rules. Before that date, there were jobs that exist in significant numbers in the national economy that plaintiff could perform, and she was therefore not disabled during that time period.

Tr. 221-38.

## DISCUSSION

**A.  Step Three and Listings 1.02 and 1.03**

Plaintiff argues the ALJ erred in finding she did not meet or equal Listings 1.02 and/or 1.03 because her foot impairments satisfy the requirements of those listings.[5] The ALJ found plaintiff did not establish an inability to ambulate effectively, a requirement of both Listings 1.02

---

[4] 20 C.F.R. Part 404, Subpart P, Appendix 1.

[5] Although Ms. Ford's briefing suggests that she meets *or equals* those listings, she provides no theory as to how she equals the listings. Instead, her opening brief focuses entirely on the opinion of her treating physician that she *meets* the listings. Dkt. 10 at 7 ("As argued herein, ample evidence from a longitudinal perspective supports Dr. Ignatius Medani's opinions that [Ms. Ford] meets the Listings."). Thus, when Plaintiff argues in her reply brief that the Commissioner waived any challenge to the contention that Plaintiff equaled Listings 1.02 and/or 1.03 by failing to respond to her arguments in that regard, this argument is disingenuous because Plaintiff did not actually present any argument regarding how she equaled those listings. The opening and response briefs focus only on whether Plaintiff meets those listings, and this order will track the specific arguments raised by the parties.

ORDER AFFIRMING THE COMMISSIONER AND DISMISSING THE
CASE - 3

and 1.03, and defined in the introductory portion of Section 1.00. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 1.00(B)(2)(b), 1.02, 1.03.

The Commissioner contends aside from short-term recovery periods following foot surgeries, when plaintiff required assistive devices, the record does not show plaintiff could not effectively ambulate. Dkt. 14 at 2-3. Plaintiff's briefing highlights the many forms of testing and treatment she had on her feet, but she cites no medical evidence indicating she cannot effectively ambulate and/or required an assistive device on an ongoing basis. *See, e.g.*, Dkt. 15 at 3-5 (citing Tr. 252, 287, 452, 675, 688, 900-01, 1198-1200, 1225-80, 1335-68, 1372-78, 1380, 1453). Plaintiff reported she could walk no farther than 1/4 of a block without having to stop and rest for at least 30 minutes (Tr. 680), but the ALJ provided numerous clear and convincing reasons to discount her subjective testimony as discussed below.

Furthermore, there are no treatment notes describing plaintiff's inability to ambulate and/or her need for an assistive device, despite her treating doctor's opinion that she was unable to ambulate and required the use of an assistive device. *See* Tr. 1373, 1377. Rather, many treatment notes spanning the adjudicated period explicitly mention a normal gait, and none of them mention plaintiff's use of an assistive device beyond a post-surgery recuperation period. *See, e.g.*, Tr. 117 (September 2015 note), 120 (February 2016 note), 252 (November 2014 note), 908 (July 2010 note), 1317 (May 2013 note), 1329 (July 2014 note). The prior ALJ decision also found Plaintiff had not shown an inability to ambulate. *See* Tr. 447. Because Plaintiff has not pointed to any evidence showing that her impairments caused her to lose the ability to ambulate effectively, she has not met her burden to show that she meets Listings 1.02 and/or 1.03 or that the ALJ erred in finding that she did not do so.

**B.      Plaintiff's Testimony**

The ALJ provided several reasons to discount plaintiff's testimony, including (1) evidence her functionality increased since the 2011 ALJ decision, to the point where plaintiff could work at FedEx at the time of the 2016 administrative hearing; (2) her allegations are not corroborated by objective medical evidence; (3) the evidence suggested she exaggerated her symptoms on multiple occasions; (4) she received little treatment for her allegedly disabling mental health problems and repeatedly either missed appointments or failed to take medication as prescribed; (5) the record shows plaintiff can interact appropriately and perform simple tasks, as evidenced by her friendships and her ability to work; and (6) plaintiff has made inconsistent reports about her symptoms. Tr. 228-32. The ALJ also expressly incorporated by reference the prior ALJ's findings regarding Ms. Ford's testimony. Tr. 228 (citing Tr. 449-50 (referencing inconsistencies between Ms. Ford's allegations and the medical evidence, Ms. Ford's lack of consistent mental health treatment, activities indicating that Plaintiff can perform light work, and evidence of symptom exaggeration)).

Plaintiff challenges only a few of these findings. Specifically, she argues the ALJ erred in finding her sporadic mental health treatment was inconsistent with her allegations, because it is actually consistent with the attendance problems described by her treating physician. Dkt. 10 at 15. Plaintiff also argues the ALJ's description of the variation in her symptom reporting does not undermine the existence of her mental health conditions, because symptoms wax and wane. *Id*. Plaintiff also argues the ALJ should not have found that her part-time FedEx job suggests she could work, because she was eventually forced to quit her job. Dkt. 10 at 16.

Plaintiff presents an alternative interpretation of part of the ALJ's reasoning that does not establish harmful error in the ALJ's decision.  First, because Plaintiff does not challenge all of

the ALJ's reasons, the unchallenged, independent bases for discounting her testimony remain valid and any error is harmless. *See Carmickle v. Comm'r of Social Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008).

Next, plaintiff has not shown the ALJ erred in interpreting the variation in her symptom reporting: the ALJ identified varying self-reports in a short period of time regarding symptoms such as hallucinations and paranoia. The ALJ may consider those inconsistent self-reports as undermining plaintiff's testimony about the severity of her symptoms. Although plaintiff contends her symptoms changed over time, the ALJ reasonably found inconsistent symptom reporting nonetheless undermined her testimony, particularly where providers never witnessed plaintiff hallucinating. Tr. 232.

Lastly, plaintiff overstates the impact of the Appeals Council evidence on the ALJ's reasoning with regard to the FedEx job. *See* Tr. 111 (July 2017 treatment note stating that Plaintiff "previously worked for Fed Ex, though she is on disability now"). Although plaintiff construes this note to imply she was forced to quit her job, and therefore the ALJ erred in finding that her FedEx work was inconsistent with her allegation of disability, the note implies no such thing. She could have quit her job upon receipt of disability benefits in February 2017 or for any other reason. Because the note is susceptible to multiple interpretations, the Court cannot say the ALJ's interpretation of plaintiff's FedEx work is unreasonable; plaintiff has not established that the ALJ erred in this regard. The Court accordingly affirms the ALJ's determination to discount plaintiff's testimony.

**C.     Medical Opinions**

Plaintiff challenges the ALJ's assessment of the medical opinions of treating physicians Ignatius Medani, M.D., and Jill Fuller, D.O., and examining psychiatrist Michelle Zipperman, M.D.

   *1.     Dr. Medani*

Dr. Medani completed a RFC questionnaire in September 2014 and wrote a narrative paragraph describing plaintiff's conditions and symptoms in October 2014. Tr. 1372-78, 1380. The ALJ summarized Dr. Medani's opinions and gave them "little or no weight" because she found them to be unexplained, and inconsistent with the medical evidence (including Dr. Medani's own treatment notes) and plaintiff's activities. Tr. 233-34.

Plaintiff argues the ALJ erred in rejecting Dr. Medani's opinion regarding Listings 1.02 and 1.03, as discussed *supra;* the Court rejects those arguments for the reasons previously explained. Plaintiff generally argues the ALJ's reasons to discount Dr. Medani's opinions are not specific and legitimate, but does not specifically address any of the ALJ's reasons. Dkt. 10 at 11. An ALJ is entitled to discount an opinion that is unexplained, and/or inconsistent with medical evidence or a claimant's activities. *See Thomas v. Barnhart,* 278 F.3d 947, 957 (9th Cir. 2002) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."); *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (rejecting physician's opinion due to discrepancy or contradiction between opinion and the physician's own notes or observations is "a permissible determination within the ALJ's province"); *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (affirming an ALJ's rejection of a treating physician's opinion that was inconsistent with the claimant's level of activity).

Because Plaintiff has not shown the ALJ's reasons are not specific and legitimate in this case, the Court need not assess the reasoning further. *See generally Carmickle*, 533 F.3d at 1161 n.2 (declining to address issues not argued with any specificity (citing *Paladin Assocs., Inc. v. Mont. Power Co.*, 328 F.3d 1145, 1164 (9th Cir. 2003) (the court "ordinarily will not consider matters on appeal that are not specifically and distinctly argued in an appellant's opening brief").)).

### *2. Dr. Fuller*

Dr. Fuller wrote a one-paragraph letter in September 2014 describing plaintiff's conditions and treatment, and instructed the reader to "please consider her permanently disabled." Tr. 1369. The ALJ discounted Dr. Fuller's letter because the doctor did not provide a detailed functional capacity or describe relevant limitations, and provided "a conclusory legal determination that was beyond the role of a provider." Tr. 233-34.

Plaintiff emphasizes the prior ALJ credited Dr. Fuller's opinion (Dkt. 10 at 14-15), but that in itself does not show that the current ALJ erroneously assessed Dr. Fuller's opinion. And although plaintiff contends Dr. Fuller's opinion can be assessed even "in the absence of a function by function report given the documentation she provided regarding Ms. Ford's limitations[,]" none of the documentation cited by plaintiff mentions any functional limitations. Dkt. 10 at 15 (citing Tr. 1369-71, 1490-1500). Under these circumstances, plaintiff has not shown the ALJ erred in discounting Dr. Fuller's opinion as failing to identify any functional limitations. *See Thomas,* 278 F.3d at 957 ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.").

ORDER AFFIRMING THE COMMISSIONER AND DISMISSING THE
CASE - 8

### 3. *Dr. Zipperman*

Dr. Zipperman performed a consultative psychiatric examination of plaintiff in November 2012 and wrote a narrative report. Tr. 1282-89. The ALJ summarized Dr. Zipperman's findings and found that her opinion did not describe with specificity the degree of plaintiff's limitations. Tr. 234-35. The ALJ also found Dr. Zipperman's references to plaintiff's physical limitations to be of concern, because Dr. Zipperman was not qualified to assess Ms. Ford's physical problems. Tr. 235. Lastly, the ALJ found Dr. Zipperman's conclusions to be inconsistent with other medical evidence in the record, as well as with plaintiff's work history. Tr. 235.

Plaintiff argues the ALJ erred in speculating that Dr. Zipperman improperly considered her physical limitations. Dkt. 10 at 13. But the ALJ did not have to rely on mere speculation: Dr. Zipperman explicitly found Ms. Ford's "limitations appear to be equally due to her mental disorder and her physical conditions[,]" even though Dr. Zipperman did not perform a physical examination of Ms. Ford. Tr. 1288. The ALJ did not err in discounting Dr. Zipperman's opinion to the extent it was based on a consideration of physical limitations which the doctor did not assess.

Plaintiff also emphasizes Dr. Zipperman opined plaintiff was not exaggerating her symptoms. Dkt. 10 at 13 (citing Tr. 1288). However, the ALJ pointed to medical evidence inconsistent with Dr. Zipperman's conclusion regarding plaintiff's concentration deficits, which is nonetheless a specific, legitimate reason to discount Dr. Zipperman's opinion. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (not improper to reject an opinion presenting inconsistencies between the opinion and the medical record).

Lastly, plaintiff contends the ALJ erred in finding Dr. Zipperman's opinion was inconsistent with her work history, because she testified at the hearing that she was struggling in her work at FedEx. Dkt. 10 at 13 (citing Tr. 351). But the entirety of plaintiff's hearing testimony describes physical struggles with the work, rather than the mental limitations described by Dr. Zipperman. *See* Tr. 356-58. In sum, plaintiff has not shown the ALJ erred in finding her ability to perform work for FedEx contradicted Dr. Zipperman's opinion, or in discounting the opinion on that basis.

**D.     Step Five Findings**

Plaintiff raises two challenges to the ALJ's step-five findings. First, she argues the ALJ erred in directly applying the Medical-Vocational Guidelines ("the Grids") to find that she became disabled when her age category changed in January 2016. The Commissioner contends after plaintiff's age category changed, she was disabled under the Grids based on her exertional limitations, and no additional non-exertional limitations could have changed that outcome. Dkt. 14 at 12. Plaintiff insists the Grids may never be directly applied if a claimant has significant non-exertional limitations (Dkt. 15 at 8), but this argument is not supported by *Cooper v. Sullivan*, 880 F.2d 1152 (9th Cir. 1989), or *Burkhart v. Bowen*, 856 F.2d 1335 (9th Cir. 1988), both of which Plaintiff relies upon. Dkt. 15 at 8. *Cooper* indicates an ALJ should consider whether the Grids direct a finding of disability based on a claimant's exertional limitations alone, even if the claimant also has non-exertional limitations, which is what occurred in this case. *Cooper*, 880 F.2d at 1155-56. *Burkhart* holds where a claimant has significant non-exertional limitations, the ALJ should consult a VE, which is what the ALJ did here for the period not covered by the Grids.  856 F.2d at 1340-41. Plaintiff has not shown the ALJ erred in finding that she was disabled under the Grids when her age category changed in January 2016. Tr. 237.

Plaintiff also argues the ALJ erred in failing to grant her request (Tr. 737) to subpoena the vocational expert ("VE") to provide the underlying documents he used to determine the numbers of jobs that correspond with the occupations identified at step five. Although an ALJ may issue a subpoena requiring a VE to produce documents if it is "reasonably necessary for the full presentation of a case," Plaintiff has not shown that this standard was met in this case. 20 C.F.R. §§404.950(d)(1), 416.1450(d)(1). Plaintiff has not submitted any evidence suggesting the VE's numbers are inaccurate to either the ALJ or the Appeals Council, and under these circumstances the ALJ did not err in relying on the VE's testimony without his providing further documentation. *See Shaibi v. Berryhill*, 883 F.3d 1102, 1110 (9th Cir. 2017) (explaining how a claimant may go about preserving a challenge to a VE's testimony about job numbers).

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

DATED this 27th day of July, 2018.

_____
BRIAN A. TSUCHIDA
Chief United States Magistrate Judge